Oscar C. Miller, Appellant, *vs.* Selena A. Barto *et al.* Appellees.

*Opinion filed October 28, 1910—Rehearing denied Dec. 9, 1910.*

1. Equity—*jurisdiction of equity to grant relief against judgments obtained by fraud or mistake.* If the rights of third parties have not intervened a court of equity will grant relief against a judgment where the defendant was prevented from making his defense by fraud, accident or mistake and where there was no fault or negligence in himself or his agents.

2. Same—*equity will not relieve against the consequences of party's own negligence.* A court of equity is only moved into action by diligence, and does not interpose to protect one who has not exercised proper diligence to protect his own interests and to make a defense which was available to him in a court of law.

3. Same—*rule that a court will not relieve party from consequences of his negligence is inflexible.* The rule that a court of equity will not grant relief against a judgment resulting from the judgment debtor's own negligence in protecting his interest is inflexible, even though the judgment is manifestly wrong in law or in fact or when the effect of allowing it to stand is to compel him to pay a debt he does not owe.

4. Same—*when equity will not interfere with a judgment.* Equity will not interfere with a judgment, even though the plaintiff's claim was unfounded, where the defendant's motion in the court of law to vacate the judgment, which was made in apt time and under which his rights would have been fully protected, was ordered stricken from the files for the neglect of the defendant or his attorney to observe some rule of procedure but the appeal from such order was not perfected.

5. Judicial sales—*prior liens not divested by bankruptcy proceeding if no trustee is appointed.* The appointment of a trustee is essential to divest the bankrupt of the title to his property, and unless a trustee is appointed the title never passes out of the bank-

rupt, and prior liens on the bankrupt's property, though obtained within four months prior to the filing of petition, are not divested.

6. SAME—*advertisement of sale in the Chicago Legal News is legal.* An execution sale is not illegal upon the ground that it was advertised in the *Chicago Legal News,* as the statute (Private Laws of 1869, p. 876,) authorizing legal notices to be published in such paper has not been changed by subsequent legislation.

7. SAME—*when a purchaser at execution sale is a trustee for owner of judgment.* Where the person to whom premises are sold on execution pays nothing for the premises but the judgment pays the bid, the purchaser holds, as trustee for the owner of the judgment, such title as she takes by virtue of the sale.

8. PARTITION—*the owner of undivided interest in land must be made a party.* The real owner of an interest in the premises sought to be partitioned must be made a party and his rights be protected before the court can proceed to a decree of partition.

9. SAME—*when court cannot refuse partition.* Under the statute a tenant in common may compel partition as a matter of legal right, and if he does not ask the court to administer any equitable remedy the court cannot refuse partition upon the ground that his legal title was acquired through a judgment that was based on an unfounded claim.

VICKERS, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

LEMUEL M. ACKLEY, for appellant.

ULLMANN & HOAG, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county dismissed for want of equity the bill filed in that court by Oscar C. Miller, appellant, against Selena A. Barto, Mathias Muench and others, appellees, for partition of a lot in Chicago, and the complainant appealed to this court.

The complainant claimed title to an undivided one-half of the lot and that the defendant Selena A. Barto owned

the other half, both having derived title by virtue of a sale on an execution issued upon a judgment in favor of Charles Baumann and against Mathias Muench, and the subject of controversy was the validity of that judgment and whether a court of equity would sustain the sale made under it. Mathias Muench, one of the defendants, filed his cross-bill, alleging that the judgment was founded on no consideration and was inequitable; that he was in possession of the premises, and that the complainant and Selena A. Barto had full notice and knowledge of such facts. The abstract does not show that the court made any disposition of the cross-bill. Muench and the holder of a mortgage answered, and the other defendants, including Selena A. Barto, were defaulted and the evidence was heard by the court. The facts on which the court acted are as follows:

Charles Baumann was a sailor on the lakes and when not following his occupation he boarded at the home of Mathias Muench, coming and going from time to time. He was drunk most of the time and would do some chores about the house like wiping dishes, and once cleaned up an empty flat. He never paid anything for his board and was given small sums for services rendered and spent the same for beer. In 1902, after Muench had married a second wife, she would not have Baumann around and turned him out, and although he had no claim he made a bargain with the complainant, Oscar C. Miller, an attorney, to sue Muench for services. Baumann and Miller were to each have one-half of what could be recovered after deducting costs and expenses, and Miller made an agreement with Lemuel M. Ackley, another attorney, by which Ackley was to receive a portion of the amount eventually recovered. Suit was brought in the superior court on July 31, 1902, and Muench was served with summons on August 16, 1902. Muench was ignorant of the English language and did not know that he was sued or served with process. At the

September term of the court Muench was defaulted and judgment was rendered against him for $1050 and costs. He was told of the judgment by a friend and employed an attorney, who filed a written appearance for him in the cause and moved the court to vacate the default and judgment. The motion was continued until the next term, when it was stricken from the files for want of "due appearance," from which order Muench prayed an appeal to the Appellate Court but did not perfect it, being advised to go into bankruptcy and get rid of the judgment in that way. Execution was issued on the judgment on November 8, 1902, and on demand of the sheriff Muench made a schedule showing personal property, consisting of teams, wagons and harness, subject to a chattel mortgage. On December 8, 1902, he filed his voluntary petition in bankruptcy in the United States court and on the eleventh of that month was adjudged a bankrupt and on the same day the sheriff levied on the lot. On January 2, 1903, the sheriff was enjoined by the bankruptcy court from selling under the execution. But two claims were filed in bankruptcy,— one of $64.48 for groceries and the other was this judgment. Baumann testified before the referee that he had no claim against Muench; that he did a few chores about the house and would be given five or ten cents, which he would spend for beer; that he was drunk and the second wife expelled him from the premises, and that he brought suit to get even with Muench. The referee reported that the claim was not meritorious and it was disallowed. No trustee was ever appointed and Muench remained in possession of his property and was discharged on November 7, 1904. On May 25, 1906, the sheriff returned the original execution issued in 1902, stating that he had levied on the lot but made no sale, and *alias* execution was then sued out and a levy made and the property was sold July 17, 1906, for $1150 to Selena A. Barto, who was represented at the sale by Lemuel M. Ackley. The costs were paid and a

shift was planned by which the plaintiff's attorney receipted for $1108.90 on the judgment, Selena A. Barto not paying anything. At the expiration of the time of redemption the sheriff made a deed to Selena A. Barto, and on December 30, 1907, she quit-claimed an undivided one-half of the lot to Oscar C. Miller, the attorney. Immediately afterward Miller filed the bill in this case for partition, and the claim for groceries had been assigned to him and he had released the lot from that claim. The rights of third parties have not intervened, and there was no basis in fact for the judgment.

Courts of equity have so often granted relief against judgments obtained by fraud, accident or mistake, where there has been no negligence on the part of a defendant, that there can be no question of power or jurisdiction to afford a remedy in such a case. If it is against conscience to execute a judgment and the defendant was prevented from making his defense by fraud or accident unmixed with any fault or negligence in himself or his agents, and the rights of third parties have not intervened, equity will relieve against the wrong. (*Hilt* v. *Heimberger*, 235 Ill. 235.) A court of equity, however, will not give ear to one who merely asks it to relieve him from the consequences of his own negligence or that of his agents. A court of equity is only moved to action by diligence, and does not interpose to protect one who has not exercised proper diligence to protect his own interests and to make a defense which was available to him in a court of law. This court long ago said that the rule is absolutely inflexible, and cannot be violated even when the judgment in question is manifestly wrong in law or in fact, or when the effect of allowing it to stand will be to compel the payment of a debt which the defendant does not owe. (*Hinrichsen* v. *VanWinkle*, 27 Ill. 334.) Muench knew of the judgment in time to avail himself of his remedy in the court of law, and by filing his appearance submitted him-

self to the jurisdiction of that court. Under section 39 of
the Practice act then in force the court was authorized, in
its discretion, to set aside the judgment upon good and
sufficient cause and upon such terms and conditions as
should be deemed reasonable. On the hearing of the mo-
tion the court would have considered both the fact that the
claim was baseless and whether the defendant was guilty
of negligence or was without fault on account of his in-
ability to understand the summons. The discretion exer-
cised by the court would have been subject to review by
the Appellate Court, and the only reason that Muench did
not obtain the judgment of the court was the negligence
of himself or his attorney in failing to comply with some
rule or to do some act which constituted a "due appear-
ance" in that court. If his motion was stricken from the
files improperly he had a right to have that question re-
viewed, and did not perfect his appeal because he was ad-
vised to go into bankruptcy. There was no accident that
he could not have foreseen and guarded against, and a
court of equity will not review the decision of a court of
law, which would be merely sitting as a court of error or
appeal. (*Hofmann* v. *Burris,* 210 Ill. 587.) The claim
was simply unfounded, and if it could be set aside in equity
on that ground the same rule must apply to all cases where
a judgment has been wrongfully recovered in an action at
law. There is no ground upon which a court of equity can
relieve Muench from the judgment.

The claim under the judgment was disallowed in the
bankruptcy proceeding, so that Baumann was not permitted
to participate in any distribution of assets in that court, but
the judgment was not disturbed and no trustee in bank-
ruptcy was appointed. The appointment of a trustee is
essential to divest the bankrupt of the title to his property,
and while the title of the trustee would relate back to the
commencement of the proceeding, the title of the bankrupt
never passes out of him if there is no trustee. (*Rand* v.

*Iowa Central Railway Co.* 186 N. Y. 58; 9 Am. & Eng. Ann. Cas. 542; *Burton* v. *Perry,* 146 Ill. 71.) The provision of the Bankruptcy act by which levies, judgments, attachments or other liens obtained within four months prior to the filing of a petition in bankruptcy are deemed null and void in case the petitioner is adjudged a bankrupt and the property passes to the trustee released from the same is for the benefit of creditors, and liens on the bankrupt's property are not vacated for his benefit. In this case the property never passed to a trustee and nothing ever happened which divested the lien.

The only other ground upon which it is contended that the execution sale was illegal is that it was advertised in the *Chicago Legal News.* By the charter of that corporation, which was declared to be a public act, it was provided that any notice or advertisement required by law should be as good and valid if published in the *Chicago Legal News* as in any newspaper. (2 Private Laws of 1869, p. 876.) This provision has never been repealed or affected by subsequent legislation, and it was regarded in *Kerr* v. *Hitt,* 75 Ill. 51, as a legislative construction of the fact that the *Chicago Legal News* is such a newspaper as notices may be published in. The facts did not justify the decree.

It appeared on the hearing that Charles Baumann, the plaintiff in the judgment, was declared insane on February 27, 1908, and that he is in the State insane asylum at Bartonville. He was not a party to the suit or represented in any manner, and Selena A. Barto, so far as she held any title to the premises, was a trustee for him. Nothing was paid at the sale except some costs which the attorneys were bound to provide under the contract, and with that exception the judgment paid the bid. The court expressed the view that Baumann was a necessary party, and the complainant filed an amendment to the bill setting out his insanity and alleging that the judgment could not now be set

aside because Baumann was insane. Baumann is the one who needs protection, but the court denied a motion to make him a defendant, perhaps on account of a determination to dismiss the bill in any event. As there was no ground for setting aside the judgment in equity the cross-bill should be dismissed, but the court could not proceed to a partition without the real owner of an interest in the property being made a party and his rights protected. No party to the suit has any beneficial interest except a mortgagee and the attorneys. Ackley testified in the suit to which Baumann was not a party, that Baumann was to give Miller one-half of whatever might be recovered, less costs and expenses, but Baumann has a right to be heard about that and to have his rights preserved.

Section 1 of the act to revise the law in relation to the partition of real estate provides that any tenant in common may compel a partition of real estate by bill in chancery or petition. The complainant in the original bill was entitled, as a matter of legal right, to a partition of the lot and did not ask the court to administer any equitable remedy, and the court could not refuse partition on the ground that his legal title was acquired through a judgment that was based on an unfounded claim.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the cross-bill and permit an amendment making Charles Baumann a defendant, or, on failure to make such amendment and to bring him into court, to dismiss the bill and to proceed further in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE VICKERS, dissenting.